## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF OHIO
## WESTERN DIVISION AT DAYTON

| | | |
|---|---|---|
| JAMES SMITH, | : | Case No. 3:07CV0309 |
| | | |
| | | District Judge Thomas M. Rose |
| Petitioner, | : | Magistrate Judge Sharon L. Ovington |
| | | |
| -vs- | | |
| | : | |
| ERNIE L. MOORE, WARDEN | | |
| | | |
| Respondent. | : | |

## REPORT AND RECOMMENDATIONS[1]

### I.      INTRODUCTION

This matter is before the Court upon Petitioner, James Smith's Petition for Writ of

Habeas Corpus (Doc. # 3), Respondent's Return of Writ (Doc. # 8), Petitioner's Traverse

(Doc. #10), and the record as a whole.

### II.      FACTUAL BACKGROUND

The Montgomery County Court of Appeals, Second Appellate District of Ohio, set

forth the facts of this case on direct appeal as follows:

> According to the state's evidence, on October 6, 1997, J.E. was living alone in an
> apartment located in Montgomery County, Ohio. At approximately 9:00 p.m., J.E.
> went to sleep in her bedroom. At that time, her front door was open approximately
> two feet with the storm door closed and locked. At approximately 1:00 a.m., she
> heard a click and saw the table lamp turn on in her living room near her bedroom
> door. She saw a man in the doorway, and the light was quickly turned off. J.E. did

---

[1] Attached hereto is a NOTICE to the parties regarding objections to this Report and Recommendations.

not see the man's face and assumed it was her boyfriend, Gil. A moment later, the man jumped on J.E.'s back and tied her hands behind her back with the cords from her bedroom telephone. The man rolled J.E. onto her back, placed a pillow over her face, and vaginally raped her. Afterward, the man bound J.E.'s feet with cord of a telephone and rummaged through her jewelry case, cigarette case and purse, taking various items. After the apartment was quiet for a while, J.E. untied part of the cords around her arms and legs, went to the kitchen and called 911. J.E. reported the robbery but not the rape. When the police arrived, they noticed a tear in the screen door which had not previously been there.

At approximately 9:45 a.m. that day, J.E. went to Kettering Medical Center, where a sexual assault examination was performed. Several samples were collected, including a vaginal swab and skin stain swabs. In addition, a sexual assault form was completed. All of the items were placed in a sexual assault evidence kit.

Following J.E.'s examination, Detective David Howell of the Riverside police department received the sexual assault evidence kit from Valerie Phibbs, the nurse who observed the doctor's examination of J.E. Howell returned with J.E. to her apartment to collect evidence. Once there, he photographed the scene, dusted for and collected fingerprints, and collected the sheets, pillowcases, the telephone, and other pieces of evidence. Howell was able to remove a latent print from the telephone that was on the headboard of J.E.'s bed. The sexual assault evidence kit, the fingerprints, and other evidence were submitted to the Miami Valley Regional Crime Lab ("MVRCL").

In December 1998, Annette Davis, a forensic scientist with MVRCL, identified semen in the vaginal swab and the skin swab from the sexual assault evidence kit. The samples were preserved for future analysis. At that time, MVRCL did not perform DNA analysis.

 In 2002, MVRCL began to receive a federal grant to outsource its non-suspect cases to a private laboratory to perform a DNA analysis. In May 2003, the vaginal swab and skin swab were sent to Bode Technology Group ("Bode") in Virginia, which generated a DNA profile consisting of thirteen pairs of numbers. This profile was returned to MVRCL. Amy Wunderlich, another forensic scientist at MVRCL, received the profile from Bode and entered it into the Combined DNA Index System ("CODIS"), a DNA database.

On September 19, 2003, the profile submitted in J.E.'s case was matched to another profile in CODIS. MVRCL was informed that the matched sample belonged to Smith. On September 18, 2004, Detective Gina Geiger of the

2

Riverside police department obtained oral swabs from Smith and submitted them to MVRCL for a comparison of his DNA profile to the profile generated by Bode. David Smith, a forensic scientist with MVRCL, performed a DNA analysis of (James) Smith's oral swab and compared it with the DNA profile from the vaginal swab. He concluded that Smith was the source of the sperm in the vaginal swab.

In December 2004, Danny Lee Harness, a latent print examiner with MVRCL, compared a fingerprint that was lifted from the telephone in J.E.'s bedroom with known prints from Smith. The fingerprint on the telephone was identified as belonging to Smith. Aaron Davis, another latent print examiner with MVRCL, reviewed Harness's identification and also concluded that the print belonged to Smith.

Through cross-examination, Smith's counsel attempted to establish that the DNA and fingerprint identification might have been erroneous. Testifying in his defense, Smith denied that he had broken into J.E.'s home and raped her. He testified that he was living in Columbus, Ohio, with his cousin, Teresa Hollis, and his daughter at the time of the offense. The state presented additional evidence in rebuttal that Smith had previously represented that he lived in Dayton in 1997.

*State v. Smith*, 2006 2365; 2006 Ohio App. LEXIS 2214, ¶¶ 7-14.

### III.    STATE COURT PROCEEDINGS

The  Montgomery County Grand Jury indicted Smith on one count of aggravated

burglary and one count of rape. (Doc. # 8, Exhibit 1, Case No. 2004CR03060).

On March 1, 2005, Smith, through counsel, filed a "Motion for Competency."

(Doc. # 8, Exhibit 9). In his motion, Smith's trial counsel stated:

This counsel has found it difficult to be sure the Defendant understands the current proceedings. The Defendant seems confused and uncertain about his current situation. Further, on several occasions, the Defendant questions this counsel's evidence against him. This counsel has stated to the Defendant it is the State's evidence not his counsel's. It is uncertain whether the Defendant understands this. This counsel would be inadequate by not raising these concerns with the Court.

*Id.*

At an in chambers conference immediately before the trial, the trial court conducted a

colloquy with Petitioner and counsel and concluded Petitioner was competent to proceed

to trial. ( Doc. # 8-5 Tr. 3). Smith was tried by a jury and found guilty of aggravated

burglary and rape. (Doc. # 8-8; Tr. 554). On April 27, 2005, Smith was ordered to serve

an aggregate term of incarceration of seventeen years for the offenses of aggravated

burglary (count one) and rape (count two). (Doc. #8, Exhibit 17)

     A.    <u>Direct appeal</u>

     Represented by counsel different from counsel at trial, Smith appealed and set

forth the four assignments of error as follows:

1.     James Smith was not afforded his constitutional rights and was denied due process
     by not being evaluated for competency to stand trial.

2.     James Smith received ineffective assistance of counsel as set forth in <u>Anders v.</u>
     <u>California</u>.

3.     James Smith was denied of a fair trial by being present during the trial in his prison
     clothes in that his attire unconstitutionally infringed upon his due process right to
     be presumed innocent until proven guilty.

4.     The conviction of James Smith is not supported by sufficient evidence and is
     against the mainfest (sic) weight of the evidence.

(Doc. # 8, Exhibit 18, Smith's Brief, Case No. 21058). On May 12, 2006, the Ohio Court

of Appeals affirmed the judgment of the trial court. (Doc. # 8, Exhibit 20).

     B.    <u>Appeal to the Ohio Supreme Court</u>

    Smith, pro se, filed a timely appeal to the Ohio Supreme Court under Case No. 06-

1067. In his memorandum in support of jurisdiction, Smith asserted the following four

propositions of law:

    I.    Whether James Smith was not afforded his constitutional rights and was denied due process by not being evaluated for competency to stand trial.

    II.    Whether James Smith received ineffective assistance of counsel as set forth in Anders v. California.

    III.    Whether James Smith was denied of a fair trial by being present during the trial in his prison clothes in that his attire unconstitutionally infringed upon his due process right to be presumed innocent until proven guilty.

    IV.    Whether the conviction of James Smith is not supported by sufficient evidence and is against the mainfest (sic) weight of the evidence.

(Doc. # 8, Exhibit 21). On August 23, 2006, the Ohio Supreme Court denied leave to appeal and dismissed the appeal because it did not involve any substantial constitutional question. (Doc. # 8, Exhibit 22).

    C.    <u>Post-conviction proceedings</u>

On May 1, 2006, Smith, pro se, filed a petition to vacate or set aside judgment of conviction or sentence based upon the following:

    1.    Petitioner was denied his constitutional rights to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution and by Article I of the Constitution.

    2.    Petitioner was denied his constitutional rights to effective assistance of counsel as guaranteed by the Sixth and Fourteenth Amendment of the United States Constitution and by Article I of the Constitution.

    3.    Petitioner was denied his Sixth and Fourteenth Amendment rights of the United States Constitution to Due Process as the result of prosecutorial misconduct.

    4.    Petitioner was denied his Sixth and Fourteenth Amendment rights of the United States Constitution to Due Process as the result of prosecutorial

misconduct.

(Doc. # 8, Exhibit 23). On May 31, 2006, the State filed a motion for summary judgment.

(Doc. # 8, Exhibit 25). Smith did not reply. On January 24, 2007, the trial court sustained

the State's motion for summary judgment and denied Smith's post-conviction petition.

(Doc. # 8, Exhibit 26).

## IV.   FEDERAL HABEAS CORPUS

Smith, *pro se*, filed the instant petition for a writ of habeas corpus setting forth the

following grounds for relief:

GROUND ONE: Amendment V.

**Supporting Facts**: "Petitioner was not afforded his constitutional rights and was
denied due process by not being evaluated for competency to stand trial."

GROUND TWO: Amendment IV.

**Supporting Facts**: "Petitioner received ineffective assistance of counsel as forth in
Anders v. California."

GROUND THREE: Amendment V/IV

**Supporting Facts**: "Petitioner was denied of a fair trial by being present during the
trial in his prison clothes in that his attire unconstitutionally infringed upon his due
process right to be presumed innocent until proven guilty."

GROUND FOUR: "Insufficient evidence and against the mainfest [sic] weight of
the evidence."

**Supporting Facts**: "Victim claims to have no idea who allegedly attacked her,
there are no other witnesses to the alleged crime. The description of his alleged
attacker does not even closely resemble. There are no finger prints."

## V.   STANDARD OF REVIEW

6

The Sixth Circuit has summarized the standard of review under the AEDPA as follows: Under the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) . . . , a federal court may not grant a writ of habeas to a petitioner in state custody with respect to any claim adjudicated on the merits in state court unless (1) the state court's decision "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court" . . . or (2) the state court's decision "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings." *Taylor v. Withrow,* 288 F.3d 846, 850 (6th Cir.2002) (quoting 28 U.S.C. § 2254(d)).

This standard requires the federal courts to give deference to state-court decisions. *Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir.1998). The first line of analysis under [the] AEDPA involves the consistency of the state-court decision with existing federal law. A state-court decision is considered "contrary to . . . clearly established Federal law" if it is "diametrically different, opposite in character or nature, or mutually opposed." *Williams v. Taylor*, 529 U.S. 362, 405 (2000) (emphasis and quotation marks omitted). Alternatively, to be found an "unreasonable application of . . . clearly established Federal law," the state-court decision must be "objectively unreasonable" and not simply erroneous or incorrect. *Id.* at 409-11.

The second line of analysis under [the] AEDPA concerns findings of fact made by the state courts. [The] AEDPA requires federal courts to accord a high degree of deference to such factual determinations. "A federal court is to apply a presumption of

correctness to state court findings of fact for habeas corpus purposes unless clear and convincing evidence is offered to rebut this presumption.  The [federal] court gives complete deference to the . . . state court's findings of fact supported by the evidence." *McAdoo v. Elo*, 365 F.3d 487, 493-94 (6ᵗʰ Cir.2004) (citations omitted).

### VI.    PETITIONER'S GROUNDS FOR RELIEF

### A.    Petitioner's competence to stand trial

In his First Ground for relief, Petitioner claims a deprivation of due process by the state trial court's failure to conduct a competency hearing. "The due-process right to a fair trial is violated by a court's failure to hold a proper competency hearing where there is substantial evidence that a defendant is incompetent." *Filiaggi v. Bagley*, 445 F.3d 851, 858 (6th Cir. 2006) (citing *Pate v. Robinson*, 383 U.S. 375, 385-86, 86 S. Ct. 836, (1966)). A defendant can be adjudged competent to stand trial if he has "sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding--and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, (1960) (*per curiam*). "[E]vidence of a defendant's irrational behavior, his demeanor at trial, and any prior medical opinion on competence to stand trial are all relevant in determining whether further inquiry is required, but . . . even one of these factors standing alone may, in some circumstances, be sufficient." *Drope v. Missouri*, 420 U.S. 162, 180, 95 S. Ct. 896 (1975).

Notably, a state court's determination of competency is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and

convincing evidence. *See Mackey v. Dutton,* 217 F.3d 399, 413 (6th Cir. 2000), *cert. denied,* 531 U.S. 1087, 121 S. Ct. 804 (2001); *see also* 28 U.S.C. § 2254(e)(1).To succeed on his habeas claim, therefore, Petitioner must demonstrate that the state courts' denial of the claim was "based an unreasonable determination of the facts in light of the evidence presented in the State court proceeding[s]." 28 U.S.C. § 2254(d)(2). "[R]egardless of whether [a federal court] would reach a different conclusion were [it] reviewing the case *de novo*, the findings of the state court must be upheld unless there is clear and convincing evidence to the contrary." *Clark v. O'Dea*, 257 F.3d 498, 506 (6th Cir. 2001).

The state court of appeals resolved this issue as follows:

In his first assignment of error, Smith claims that the trial court erred when it denied his counsel's request for a competency evaluation.

A defendant is presumed to be competent. *State v. Rose*, Clark App. No. 2004 CA 40, 2005 Ohio 3182, P10. In order to rebut this presumption, the defendant must request a competency hearing and at a subsequent hearing, a preponderance of the evidence must show that the defendant, as a result of his present mental condition, is not capable of understanding the proceedings and is unable to assist in his defense. Id.; R.C. 2945.37(G). The court may order an evaluation of the defendant's present mental condition, but it is not required to do so. R.C. 2945.371(A); *State v. Stahl*, Greene App. No. 2004-CA-69, 2005 Ohio 2239, P19. We review the court's failure to order a competency evaluation for abuse of discretion. *Stahl* at P19.

We find no abuse of discretion in the trial court's refusal to order a competency evaluation in this case. Prior to the beginning of trial, the court discussed the competency issue with Smith, who stated that he did not want an evaluation and that he wished to proceed to trial that day. Smith's counsel indicated that he believed "it would be best to have him evaluated just to make sure there's nothing there that prevents him from understanding truly what's going on *** the next two or three days." However, Smith's counsel made no specific argument as to why he believed Smith might be incompetent. In addition, Smith had no evidence to present at that time to suggest that Smith was incapable of understanding the proceedings and was unable to assist in his defense. Based on the record presented, the trial

court did not abuse its discretion when it declined to order an evaluation. The first assignment of error is overruled.

*State v. Smith*, 2006 2365; 2006 Ohio App. LEXIS 2214, ¶¶ 20-23.

At an in-chambers conference on the first day of trial, the following colloquy was held between the court, on the one hand, and Smith and his attorney, on the other:

> THE COURT: First of all, Mr. Smith, we had a discussion last week in the courtroom that Mr. Gabel had filed a request that the Court determine whether or not you were competent to stand trial and assist in your defense. And, at that time, in that discussion, I had asked you some questions and you indicated that you did not want such an evaluation and you did not want the Court to delay things. That you wanted to proceed to trial today, so I will request again whether or not there's any evidence about the issue of competency that you want to present to me?

> MR. SMITH: No.

> THE COURT: And, do you want to still proceed with trial today without having evaluation that would be at least five weeks before we could get back together and have a trial?

> MR. SMITH: Yes.

> THE COURT: Mr. Gabel, is there anything that you wanted to present in addition to what we discussed last week on the record with regard to the issue of competency?

> MR. GABEL: Your Honor, again, I would renew that as counsel for Mr. Smith, it's always difficult when one has a conflict with—with a client as to what might be best, but based on my experience, I still believe it would be best to have him evaluated just to make sure there's nothing there that prevents him from understanding truly what's going on about—how the next two or three days.
> So, I believe, based on my—my discussions with him as recently as yesterday and some questions he's raised, I still believe it'd be best for him to be evaluated.

> THE COURT: Now, that—that's part of my question, but the other part of the

10

question is, is there any evidence that you have to present at this point with regard to the issue of competency?

MR. GABEL: Other than my interviews with him, there's nothing else.

(Doc. # 8, Tr. 2-3 ).

Petitioner contends that "[b]eing able to answer to 'yes or no' questions under a perceived threat of additional lengthy delay does not equate with a defendant 'appearing competent.'" (Doc. # 10 at 3). It appears that Petitioner misapprehends the nature of the burden here. Under Ohio law, Petitioner is presumed competent and has the burden to establish incompetency by a preponderance of evidence. R. C. 2945.37(G). A presumption of competence does not violate due process. *Medina v. California,* 505 U.S. 437, 446-49 (1992). The Ohio Court of Appeals found that there is no evidence to suggest that Smith was incapable of understanding the proceedings and was unable to assist in his defense. Indeed, the trial record establishes that Petitioner was able to understand the proceedings and assist in his defense. Smith was able to understand the trial court's questions and to respond both at the in-chambers conference and at trial. Petitioner's trial testimony discloses this fact. While it is clear that Petitioner was not satisfied with his court appointed counsel's selection of clothing for trial and had other disagreements with him, the record is devoid of an indicia of incompetence. The state court's determination of competency is a factual finding entitled to a presumption of correctness on federal habeas review, rebuttable only by clear and convincing evidence. *See Mackey v. Dutton,* 217 F.3d 399, 413 (6th Cir. 2000), *cert. denied,* 531 U.S. 1087, 121 S. Ct. 804 (2001). Petitioner has

failed to present clear and convincing evidence that he was incompetent to stand trial.

Accordingly, his First Ground for Relief lacks merit.

    B.    **Ineffective Assistance of Trial Counsel**

       The Sixth Amendment, applicable to the states through the Fourteenth Amendment,

provides a criminal defendant with "the right to the effective assistance of counsel."

*Strickland v. Washington*, 466 U.S. 668, 686, 104 S. Ct. 2052 (1984)(quoting *McMann v.*

*Richardson*, 397 U.S. 759, 771 n.14 (1970)).  To establish a claim of ineffective assistance

of trial counsel, a criminal defendant must make a two-part showing:

> First, the defendant must show that counsel's performance was
> deficient.  This requires showing that counsel made errors so
> serious that counsel was not functioning as the 'counsel'
> guaranteed the defendant by the Sixth Amendment.  Second,
> the defendant must show that the deficient performance
> prejudiced the defense.  This requires showing that counsel's
> errors were so serious as to deprive the defendant of a fair trial,
> a trial whose result is reliable.

*Strickland*, 466 U.S. at 687; *see O'Hara v. Brigano*, 499 F.3d 492, 505 (6th Cir. 2007).

       The state court of appeals dealt with this issue as follows:

In his second assignment of error, Smith claims that the trial court denied his right
to a fair trial when it denied his request for new counsel. Smith asserts that he could
not communicate with his attorney and, thus, his attorney could not properly
prepare his defense. Smith acknowledges that his attorney advocated for him, and
he stipulates that his attorney's conduct "fell within the wide range of reasonable
professional assistance as outlined in State v. Bradley, [(1989), 42 Ohio St. 3d 136,
538 N.E.2d 373]." However, he claims that the denial of his motion for new counsel
deprived him of the effective assistance of counsel.

As we stated in State v. Adair, Montgomery App. Nos. 20606, 20607, 20608, 2005
Ohio 2858:

"A criminal defendant's Sixth Amendment right to competent counsel does not extend to a right to counsel of the defendant's choice. *Thurston v. Maxwell* (1965), 3 Ohio St.2d 92, 93, 209 N.E.2d 204. Nor does the right to counsel include a right to a meaningful or peaceful relationship between counsel and defendant. *State v. Blankenship* (1995), 102 Ohio App.3d 534, 558, 657 N.E.2d 559, citing *Morris v. Slappy* (1983), 461 U.S. 1, 103 S. Ct. 1610, 75 L. Ed. 2d 610. However, a criminal defendant may discharge a court-appointed attorney when the defendant can demonstrate a break-down in the attorney-client relationship to such a degree as to endanger the defendant's right to effective assistance of counsel. Specifically, an indigent defendant is entitled to the appointment of new counsel when there is a showing of good cause, such as a conflict of interest where the conflict is so severe that the denial of substitute counsel would violate the Sixth Amendment right to counsel. *Blankenship*, supra, at 558, 657 N.E.2d 559. Alternatively, the defendant may demonstrate a complete breakdown of communication or an irreconcilable conflict which leads to an unjust result. Id.; see also *State v. McCoy,* Greene App. No. 2003-CA-27, 2004 Ohio 266." Id. at P4.

Here, Smith requested new counsel at the conclusion of a conference in chambers immediately prior to jury selection. When asked why he wanted new counsel, Smith stated that it seemed that his attorney was "against me instead of bein' with me" and "we don't understand each other." The court denied the motion and indicated that the case would then proceed to trial.

Based on the record before us, we cannot conclude that the court abused its discretion in denying the motion. Earlier in the conference, the court had stated to Smith that it was aware that he has "difficulty sometimes communicating with [his attorney], that you think the case ought to go one way and there are some things that he may want to do that you don't or either way." However, the court apparently did not believe - and we find no indication in the record - that there had been a complete breakdown in communication between Smith and his attorney.

The second assignment of error is overruled.

*State v. Smith*, 2006 2365; 2006 Ohio App. LEXIS 2214,  ¶¶31-36.

Petitioner states "[t]he respondent is correct in recognizing that, however inartfully worded, the essence of this issue is the denial of substitute counsel of choice, rather than any specific aspect of counsel's performance at trial." (Doc. #10 at 3).

However, Petitioner argues that the clear breakdown in attorney-client communication mandated appointment of substitute counsel. The state court found that there was not a complete breakdown in communication between Smith and his attorney.

The court of appeals' decision was not contrary to United States Supreme Court precedent nor was it an unreasonable determination of the facts. The lack of any allegation of deficient performance or resulting prejudice fails to establish ineffective assistance under *Strickland*. Petitioner's Second Ground for Relief is without merit.

C. **Appearing in Prison Clothes at Trial**

Petitioner claims that the trial court erred by allowing him to wear prison clothes in front of the jury during the trial. "A defendant cannot be compelled to stand trial before a jury while dressed in identifiable prison clothes." *Estelle v. Williams,* 425 U.S. 501, 512-13, 48 L. Ed. 2d 126, 96 S. Ct. 1691 (1976).This is because of the possible damage to "the presumption of innocence guaranteed as part of a defendant's due process right to a fair trial."*United States v. Waldon,* 206 F.3d 597, 607(6th Cir. 2000) (citing *Estelle,* 425 U.S. at 504).

The state court of appeals found as follows:

In his third assignment of error, Smith contends that he was denied a fair trial when he was compelled to wear prison garb at his trial.

The Supreme Court has held that a defendant's right to due process is violated when he is compelled to appear at trial wearing identifiable prison clothing. *Estelle v. Williams* (1976), 425 U.S. 501, 96 S. Ct. 1691, 48 L. Ed. 2d 126. The court reasoned, in part, that "the constant reminder of the accused's condition implicit in such distinctive, identifiable attire may affect a juror's judgment." Id. at 504-05. The Supreme Court, however, declined to establish a per se rule that

14

invalidated a conviction whenever the accused wore jail clothing at trial. Id.; see also, *State v. Dorsey* (Apr. 23, 1998), Cuyahoga App. No. 72177, 1998 Ohio App. LEXIS 1727. Rather, when a defendant wears prison attire before the jury, the relevant inquiry is whether he was compelled to do so. Id. at 507.

In the present case, the court spoke with Smith prior to jury selection regarding his clothing. The court stated its understanding that Smith's counsel had brought him a shirt, jacket, and a pair of pants over the weekend and that Smith had been given the opportunity to put them on but Smith had refused. The court also stated that it understood that Smith had wanted to wear the clothes in which he had been arrested six months before and that he had been told by the deputies that the clothes were more than likely very wrinkled and smelly. When Smith indicated that the clothes brought by his attorney were "too little," a deputy informed the court that Smith had tried on the pants over his blue jail pants, that he had put on the jacket and took it off right away without the deputies being able to see how it fit, and that he had not tried on the shirt at all. Smith's counsel further informed the court of the size of the clothes, adding that the pants were the waist size that Smith had told him, although the inseam length of the pants was 30 inches rather than 32 inches. The court gave Smith the option of wearing the clothes brought by his attorney or his jail clothing. The court further informed Smith that, if he chose to wear his jail garb, the court would instruct the jury not to infer anything from his attire or hold it against him. He told Smith, however, that the jury may make such inferences despite his instruction. Smith opted to wear his jail clothing. The court responded that if Smith changed his mind, he should inform his attorney so that the court could "make arrangements to have that clothing for you."

The record reveals that Smith was not compelled to wear his jail garb at trial. Smith was provided street clothes by his attorney but chose not to wear them because he did not like how they fit. Smith's attorney's statements reflect that he had made an effort to provide clothing that would fit Smith, although he acknowledged that the pants would have been short. The exchange between the court and Smith further demonstrated that the court was concerned that Smith was not in street clothes and attempted to resolve the situation prior to jury selection. Finally, although the transcript provided by the parties does not include voir dire, the court had indicated to Smith that it would instruct the jury not to draw inferences from his clothing or to hold it against him. We presume that this cautionary instruction was, in fact, given and that the jury followed that instruction. *State v. Stallings*, 89 Ohio St. 3d 280, 286, 2000 Ohio 164, 731 N.E.2d 159. We thus presume that the trial court's cautionary instruction cured any potential prejudice by Smith's appearance at trial in jail clothing. *Dorsey*,

15

supra.

The third assignment of error is overruled.

*State v. Smith*, 2006 2365; 2006 Ohio App. LEXIS 2214, ¶¶ 25-29.

Petitioner asserts that he was "... offered a Hobson's choice: either wear prison garb or wear clothes that (sic) uncontroverted did not fit." (Doc. # 10 at 4). The state court found that Smith was not compelled to wear his jail garb at trial and was provided street clothes by his attorney but chose not to wear them because he did not like how they fit. Petitioner contends that this constitutes an unreasonable determination of the facts. A review of the in-chambers conference held before the trial started reveals that Smith was not forced to wear prison clothes. (Doc. # 8, 20-22). Although Petitioner was not satisfied with the way the pants fit (two inches too short), the trial court gave him a choice and did not force him to wear prison garb. The state court's decision was not contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court and was not based on an unreasonable determination of the facts in light of the evidence presented in the State court proceedings.

### D.    <u>Sufficiency of the Evidence</u>

Sufficient evidence supports a conviction if, after viewing the evidence (and the inferences to be drawn therefrom) in the light most favorable to the prosecution, the court can conclude that any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt. *Jackson v. Virginia*, 443 U.S. 307,

324 (1979) *Apanovitch v. Houk*, 466 F.3d 460, 488 (6th Cir. 2006);*Brown*, 441 F.3d at 351; *United States v. Jamieson*, 427 F.3d 394, 402 (6th Cir. 2005), *cert. denied*, 126 S. Ct. 2909 (2006). "This requires successful challengers to meet a very high threshold, even with respect to newly-discovered evidence." *Apanovitch*, 466 F.3d at 488 (citing *Schlup v. Delo*, 513 U.S. 298, 329 (1995)). Obviously, this standard of review does not permit the federal court to make its own subjective determination of guilt or innocence; the standard gives full play to the responsibility of the trier of fact to resolve conflicts in testimony, to weigh the evidence, and to draw reasonable inferences from the basic facts to the ultimate facts. *Herrera v. Collins*, 506 U.S. 390, 401-02 (1993); *McKenzie v. Smith*, 326 F.3d 721, 727 (6th Cir. 2003). This due process guarantee of sufficiency of the evidence extends only to facts needed to establish the elements of the crime and not to the state's burden to prove the absence of an affirmative defense; however, if the state has made the absence of a defense an element of the crime, sufficiency of evidence on the issue will then be relevant. *Allen v. Redman*, 858 F.2d 1194, 1196-98 (6th Cir. 1988).

An attack on the credibility of witnesses is simply a challenge to the quality of the government's evidence and is not a valid challenge to the constitutional sufficiency of the evidence. *Martin v. Mitchell*, 280 F.3d 594, 618 (6th Cir. 2002); *see also Jamieson*, 427 F.3d at 402 ("we may not consider the credibility of witnesses or weigh the evidence"). The state court of appeals summarized the sufficiency of the evidence as follows:

17

"'[S]ufficiency' is a term of art meaning that legal standard which is applied to determine whether the case may go to the jury or whether the evidence is legally sufficient to support the jury verdict as a matter of law." *State v. Thompkins,* 78 Ohio St.3d 380, 386, 1997 Ohio 52, 678 N.E.2d 541, citing Black's Law Dictionary (6th Ed.1990) 1433. When reviewing the sufficiency of evidence, the relevant inquiry is whether any rational finder of fact, viewing the evidence in a light most favorable to the state, could have found the essential elements of the crime proven beyond a reasonable doubt. *State v. Dennis*, 79 Ohio St.3d 421, 430, 1997 Ohio 372, 683 N.E.2d 1096, citing *Jackson v. Virginia* (1979), 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d. 560. A guilty verdict will not be disturbed on appeal unless "reasonable minds could not reach the conclusion reached by the trier-of-fact." Id.

In contrast, when a conviction is challenged on appeal as being against the manifest weight of the evidence, we must review the entire record, weigh the evidence and all reasonable inferences, consider witness credibility, and determine whether, in resolving conflicts in the evidence, the trier of fact "clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered." *Thompkins*, 78 Ohio St.3d at 387, citing *State v. Martin* (1983), 20 Ohio App.3d 172, 175, 20 Ohio B. 215, 485 N.E.2d 717. Because the trier of fact sees and hears the witnesses and is particularly competent to decide "whether, and to what extent, to credit the testimony of particular witnesses," we must afford substantial deference to its determinations of credibility. *State v. Lawson* (Aug. 22, 1997), Montgomery App. No. 16288, 1997 Ohio App. LEXIS 3709. "Contrastingly, the decision as to which of several competing inferences, suggested by the evidence in the record, should be preferred, is a matter in which an appellate judge is at least equally qualified, by reason and experience, to venture an opinion." Id. A judgment should be reversed as being against the manifest weight of the evidence only in exceptional circumstances. *Martin,* 20 Ohio App.3d at 175.

According to the state's evidence, on October 6, 1997, J.E. was living alone in an apartment located in Montgomery County, Ohio. At approximately 9:00 p.m., J.E. went to sleep in her bedroom. At that time, her front door was open approximately two feet with the storm door closed and locked. At approximately 1:00 a.m., she heard a click and saw the table lamp turn on in her living room near her bedroom door. She saw a man in the doorway, and the light was quickly turned off. J.E. did not see the man's face and assumed it was her boyfriend, Gil. A moment later, the man jumped on J.E.'s back and tied her hands behind her back with the cords from her bedroom telephone. The man rolled J.E. onto her back, placed a pillow over her face, and vaginally raped her.

18

Afterward, the man bound J.E.'s feet with cord of a telephone and rummaged through her jewelry case, cigarette case and purse, taking various items. After the apartment was quiet for a while, J.E. untied part of the cords around her arms and legs, went to the kitchen and called 911. J.E. reported the robbery but not the rape. When the police arrived, they noticed a tear in the screen door which had not previously been there.

At approximately 9:45 a.m. that day, J.E. went to Kettering Medical Center, where a sexual assault examination was performed. Several samples were collected, including a vaginal swab and skin stain swabs. In addition, a sexual assault form was completed. All of the items were placed in a sexual assault evidence kit.

Following J.E.'s examination, Detective David Howell of the Riverside police department received the sexual assault evidence kit from Valerie Phibbs, the nurse who observed the doctor's examination of J.E. Howell returned with J.E. to her apartment to collect evidence. Once there, he photographed the scene, dusted for and collected fingerprints, and collected the sheets, pillowcases, the telephone, and other pieces of evidence. Howell was able to remove a latent print from the telephone that was on the headboard of J.E.'s bed. The sexual assault evidence kit, the fingerprints, and other evidence were submitted to the Miami Valley Regional Crime Lab ("MVRCL").
In December 1998, Annette Davis, a forensic scientist with MVRCL, identified semen in the vaginal swab and the skin swab from the sexual assault evidence kit. The samples were preserved for future analysis. At that time, MVRCL did not perform DNA analysis.

In 2002, MVRCL began to receive a federal grant to outsource its non-suspect cases to a private laboratory to perform a DNA analysis. In May 2003, the vaginal swab and skin swab were sent to Bode Technology Group ("Bode") in Virginia, which generated a DNA profile consisting of thirteen pairs of numbers. This profile was returned to MVRCL. Amy Wunderlich, another forensic scientist at MVRCL, received the profile from Bode and entered it into the Combined DNA Index System ("CODIS"), a DNA database.

On September 19, 2003, the profile submitted in J.E.'s case was matched to another profile in CODIS. MVRCL was informed that the matched sample belonged to Smith. On September 18, 2004, Detective Gina Geiger of the Riverside police department obtained oral swabs from Smith and submitted them to MVRCL for a comparison of his DNA profile to the profile generated by Bode. David Smith, a forensic scientist with MVRCL, performed a DNA

19

analysis of (James) Smith's oral swab and compared it with the DNA profile from the vaginal swab. He concluded that Smith was the source of the sperm in the vaginal swab.

In December 2004, Danny Lee Harness, a latent print examiner with MVRCL, compared a fingerprint that was lifted from the telephone in J.E.'s bedroom with known prints from Smith. The fingerprint on the telephone was identified as belonging to Smith. Aaron Davis, another latent print examiner with MVRCL, reviewed Harness's identification and also concluded that the print belonged to Smith.

Through cross-examination, Smith's counsel attempted to establish that the DNA and fingerprint identification might have been erroneous. Testifying in his defense, Smith denied that he had broken into J.E.'s home and raped her. He testified that he was living in Columbus, Ohio, with his cousin, Teresa Hollis, and his daughter at the time of the offense. The state presented additional evidence in rebuttal that Smith had previously represented that he lived in Dayton in 1997.

Upon review of the record, we find ample evidence from which the jury could have concluded that Smith had committed aggravated burglary and rape. The state presented evidence that a male individual had entered J.E.'s apartment without permission, raped her, and taken items from her cigarette case, purse, and jewelry box. There was substantial evidence that Smith's DNA matched the DNA profile from J.E.'s sexual assault evidence kit. Morever, although Smith asserts on appeal that there was no fingerprint evidence, the state presented evidence that Smith's fingerprint was found on the telephone from J.E.'s bedroom. Accordingly, the jury could have reasonably concluded that Smith unlawfully entered J.E.'s bedroom and raped her.

Smith emphasizes that J.E.'s description of her attacker did not match his physical description. At trial, J.E. testified that she awoke when she heard the click of the table lamp in the living room, she "saw the person, turned [her] head and the light went out." She described the person as about five feet, ten inches tall, 190 pounds, and with an olive complexion. On cross-examination, J.E. agreed that she may have initially described her assailant as having a Hispanic-sounding voice. Smith testified that he is six feet, one inches tall and weighed 210 pounds in October 1997. Smith testified that he does not speak Spanish.

Although J.E.s description of her assailant did not match Smith, her testimony

indicated that she had a limited opportunity to view her attacker. She further
testified that she is nearsighted, that she was not wearing her glasses, and that
she had initially assumed that the individual was her boyfriend. J.E. also stated
that she did not see the individual's face. In light of this testimony and the
forensic evidence linking Smith to the offense, the jury could have reasonably
chosen to attach little significance to her physical description of the assailant
and, instead, to credit the identification that was supported by the DNA and
fingerprint evidence. Accordingly, we conclude that Smith's convictions for
aggravated burglary and rape were based on sufficient evidence and were not
against the manifest weight of the evidence.

The fourth assignment of error is overruled.

*State v. Smith*, 2006 2365; 2006 Ohio App. LEXIS 2214, ¶¶ 5-18.

The state court of appeals correctly applied *Jackson v. Virginia, supra,* at the
first paragraph of its decision set out above, and thus the state court's decision is
plainly not contrary to United States Supreme Court precedent. Neither is the state
court's decision an unreasonable determination of the facts in light of the forensic
evidence presented in this case. Petitioner asserts that "... his alibi in conjunction with
the failure of the complaining witness to identify him as the assailant demonstrates his
actual innocence in this case." (Doc. # 10 at 6). However, this Court  may not consider
the credibility of witnesses or weigh the evidence. *See Jackson,* 443 U.S. at 319-20;
*see also Martin*, 280 F. 3d at 618.

The Ohio Court of Appeals applied *Jackson* in its analysis of Petitioner's claim
of insufficiency of evidence. It cited specific evidence on the record from which a
reasonable juror could find the presence of the elements of both offenses. Further,
there was substantial evidence at trial whereby a rational trier of fact, viewing the

evidence in the light most favorable to the State, could have found beyond a reasonable doubt that Petitioner was guilty of rape and aggravated burglary. Petitioner's final Ground for Relief is without merit.

The conclusions reached herein are not debatable by jurists of reason and do not otherwise present issues adequate to deserve encouragement to proceed further. Consequently, a certificate of appealability should not issue.

## IT IS THEREFORE RECOMMENDED THAT:

1.      James Smith's Petition for Writ of Habeas Corpus (Doc. #1) be denied and dismissed;

2.       A certificate of appealability under 28 U.S.C. §2253(c) not issue; and

3.      The case be terminated on the docket of this Court.

June 22, 2010


     s/Sharon L. Ovington
     Sharon L. Ovington
     United States Magistrate Judge

**NOTICE REGARDING OBJECTIONS**

Pursuant to Fed. R. Civ. P. 72(b), any party may serve and file specific, written objections to the proposed findings and recommendations within fourteen (14) days after being served with this Report and Recommendations.  Pursuant to Fed. R. Civ. P. 6(d), this period is extended to seventeen (17) days because this Report is being served by one of the methods of service listed in Fed. R. Civ. P. 5(b)(2)(C), (D), (E), or (F).  Such objections shall specify the portions of the Report objected to and shall be accompanied by a memorandum of law in support of the objections.  If the Report and Recommendations are based in whole or in part upon matters occurring of record at an oral hearing, the objecting party shall promptly arrange for the transcription of the record, or such portions of it as all parties may agree upon or the Magistrate Judge deems sufficient, unless the assigned District Judge otherwise directs.  A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Failure to make objections in accordance with this procedure may forfeit rights on appeal.  *See Thomas v. Am,* 474  U.S. 140 (1985); *United States v. Walters,* 638 F. 2d 947 (6th Cir. 1981).